[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The 31 year old plaintiff wife married the 36 year old defendant husband on July 4, 1983 at Derby, Connecticut. No child has been born to the plaintiff wife since the date of the marriage. The plaintiff is presently finishing the third year of the evening program at the University of Bridgeport Law School, having graduated from Vassar College prior to this marriage. The defendant is a high school graduate who was operating a fish and chips restaurant at the time of the marriage. The plaintiff joined defendant in running the restaurant which was losing money, prompting the defendant to obtain employment at Pitney Bowes in Danbury in June, 1984 where he is still employed. The restaurant was sold in August, 1984.
For the following 12 months, the plaintiff was employed as an administrative assistant at Katz Realty in Norwalk. She thereafter worked for a Bridgeport law firm. The court finds that both parties are self-supporting, neither requested an alimony CT Page 2080 award and the court will make none.
Both parties adopted a common goal of working as long and as hard as possible in order to save sufficient money to buy a house which they did in June, 1986, paying $105,000 for 6 Brook Lane, Middlebury. Both parties admitted to being frugal. The court infers that the other marital matters that were breaking down the marriage were avoided by each party immersing one's self in working. By agreement, the parties deferred starting a family, and abstinence was practiced, if not by agreement, by conduct.
The court's conclusion is that what assets the parties accumulated during the marriage were as the result of their joint efforts. Although the defendant attempted to demonstrate that the plaintiff was primarily the cause of the marriage breakdown, (c.f. defendant's Exhibits #3a and #3b), the court finds plaintiff's explanation of her reimbursement for traveling expenses credible. The court declines to allocate responsibility for the marriage breakdown unequally.
The parties separated in June, 1990 when the plaintiff moved to her mother's. The court finds that the marriage had broken down beyond repair a full 12 months before, as testified to by the plaintiff.
As of June, 1990, the parties had a home with a mortgage balance of about $91,000 in a current status. It now has a fair market value of $132,000 based on the testimony of Mrs. Carolyn Laskas, a real estate broken with 17 years experience. After the separation, except for $1,000 paid by plaintiff, neither party paid the mortgage installments. As a result, the mortgage is being foreclosed and a judgment ordering an auction on May 18, 1991 has been entered, (CV-90-099667, Waterbury J.D.). The defendant has been frustrating plaintiff's efforts to sell the property privately and wants the auction to be held. He has been occupying the premises since November, 1990.
In addition, the defendant had a deferred investment plan at Pitney Bowes from which he withdrew $4,328.05 in November, 1990 claiming hardship because of the foreclosure, (plaintiff's Exhibit B). His remaining deposit is under $50.
The parties jointly own 114 shares of Pitney Bowes common stock which closed at $49.50 on March 20, 1991, a market value of $5,643. The certificates are missing but the company has been notified not to transfer the ownership.
The defendant also closed his F.C.U. account at Pitney Bowes by withdrawing $5,000. CT Page 2081
The plaintiff has a 401K plan containing $1,200 and an IRA containing $2,200.
The plaintiff closed her People's Bank savings account by withdrawing $4,300.
The court, having reviewed the evidence in light of the statutory criteria enters the following decree:
1. The allegations of the complaint are found proven and a decree is entered on the complaint dissolving the marriage on the ground alleged.
2. The cross-complaint is dismissed as moot.
3. The real estate is ordered to be sold and in order to allow maximum exposure, the defendant shall not be present for any showing, the broker shall give him one hour notice if he is at home and a lock box may be put on the entrance. The listing broker shall be provided with the security system code and operating instructions, a for sale sign may be erected on the front lawn and the parties shall entertain all offers. If the defendant is alleged to be interfering with maximum exposure of the property, or its sale, either party may petition the undersigned for an immediate hearing to address any such allegation.
Upon sale, after payment of all items necessary to deliver marketable title, the parties shall divide the net proceeds equally.
4. The defendant is ordered to execute all appropriate stock powers, affidavits and any other documentation necessary to allow the reissue of the Pitney Bowes stock to the plaintiff as sole owner. The court awards sole ownership of such stock to the plaintiff.
5. No periodic alimony is awarded.
6. Each party shall retain the monies each has already reduced to sole possession.
7. The plaintiff shall retain as her sole property all items of tangible personal property, including her auto, now in her possession.
8. The defendant shall retain as his sole property all items of tangible personal property, including his autos, now in his possession. CT Page 2082
9. Each party shall pay the debts each has listed on the respective financial affidavits, and any legal bills, and save the other party harmless and indemnified.
10. The plaintiff maybe restored to her maiden name if she wishes to resume it by including an appropriate order in the judgment file.
11. Counsel for the plaintiff shall prepare the judgment file.
HARRIGAN, J.